Junta de Relaciones del Trabajo de Puerto Rico, peticionaria, *v.* International Longshoremen Association (ILA), District Council of The Ports of Porto Rico y su Presidente Eusebio G. Moreno y sus Uniones Locales Núms. 1740, 1782 y 1674 y sus respectivos Presidentes Amado Torres Báez, Ramón Mejías y Juan Vidal Álvarez y su Sub-Local 1674 y su Presidente Lorenzo Rosaly, demandadas.

Número 36.

*Sometido:* 10 de junio de 1954. *Resuelto:* 30 de junio de 1954.

*Hon. Secretario de Justicia José Trías Monge, Aurelio Torres Braschi, Procurador Auxiliar, Ramón Acevedo Oliveras* y *Eduardo Álvarez de la Vega,* abogados estos de la Junta y todos de la peticionaria; *Juan Marcano,* abogado de las demandadas; *José López Baralt,* abogado de Central Roig Refining Co. y *Charles R. Hartzell, Rafael O. Fernández* y *José L. Novas,* abogados de la P. R. Steamship Association, como *amici curiae.*

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

Los antecedentes del presente recurso aparecen de nuestra decisión en el caso de *Junta Rel. Trabajo* v. *ILA*, 73 D.P.R. 616. Brevemente expuestos, en lo que aquí concierne, pueden sintetizarse así: Las aquí demandadas y la Puerto Rico Steamship Association, en representación de varias compañías navieras, celebraron un Convenio Colectivo el 24 de octubre de 1950, con efecto retroactivo al 1ro. de enero del mismo año, por un período de dos años, estableciendo los términos y condiciones y turnos de trabajo en los distintos puertos de la isla, y los salarios a ser pagados a los obreros y empleados en las distintas faenas relacionadas con la carga y descarga a bordo de los barcos y en tierra.

El art. 7, inciso 27, de dicho Convenio contenía una cláusula de no-huelga, mediante la cual los miembros de la Unión incluídos en la unidad contratante se comprometían "a no suspender el trabajo, ni parcial ni totalmente, por ninguna razón o motivo durante la vigencia de este contrato". Las compañías navieras formularon ciertos cargos contra la Unión contratante imputándole la violación de la cláusula de no-huelga y la Junta de Relaciones del Trabajo de Puerto Rico, luego de presentar querella contra las aquí demandadas y designar un Oficial Examinador para conocer de la misma, dictó decisión el 14 de abril de 1952 adoptando las conclusiones y recomendaciones de dicho Oficial Examinador, y expidió una Orden dirigida a las aquí demandadas para que "cesen y desistan de en manera alguna violar los términos del convenio que tienen firmado, o que firmen" con la Puerto Rico Steamship Association y las compañías navieras por ésta representadas, "o con cualquier otra asociación o patrono" y a tomar cierta acción afirmativa.

La Junta, de conformidad con las disposiciones del art. 9(2)(a) de la Ley de Relaciones del Trabajo de Puerto Rico—núm. 130 de 8 de mayo de 1945 (pág. 407), enmendada por la núm. 6 de 7 de marzo de 1946 ((1) pág. 19)—

acudió a este Tribunal en solicitud de que pusiéramos en vigor la referida Orden. (¹)   Como el Convenio Colectivo contenía además una cláusula de taller cerrado, no consideramos apropiado ponerla entonces en vigor.   Nos expresamos así:

"En la vista oral de este recurso se afirmó que hay pendiente ante la Junta Nacional un procedimiento sobre práctica ilícita de trabajo en que está envuelta la validez de la cláusula de taller cerrado.   En tal situación, no creemos apropiado entrar a considerar el *status* del convenio colectivo que nos ocupa por el efecto que en él pueda tener la presencia de la referida cláusula de taller cerrado ni examinar la contención de la Junta Insular de que a lo sumo una Orden de la Junta Nacional en dicho procedimiento haría académica la Orden que la Junta Insular nos pide pongamos en vigor.

"La cuestión con que ahora nos confrontamos no estuvo ante la consideración de la Junta Insular en el procedimiento que dió origen a su citada orden, ni con relación a ella tuvo oportunidad de hacer conclusiones de clase alguna.   Como dicha cuestión va más allá del funcionamiento técnico de la Ley Federal, pues sugiere un posible choque entre la política pública del Congreso, que proscribió el taller cerrado en los convenios colectivos, y la política pública de nuestra Asamblea Legislativa, que tiende a mantener su integridad una vez adoptados; y la suerte del convenio aquí envuelto depende de la determinación que en el procedimiento ante ella adopte la Junta Nacional y del alcance de las órdenes que pueda dictar en el ejercicio de su autoridad, no consideramos propio poner ahora en vigor la Orden de la Junta Insular.

"El caso será devuelto a dicha Junta para que una vez conocida la actuación de la Junta Nacional a ese respecto, pueda ajustar su orden a la situación de derecho que emane de dicha actuación." *Junta Rel. Trabajo* v. *ILA,* supra, págs. 647–8.

El 30 de marzo de 1953, la Junta Nacional de Relaciones del Trabajo emitió decisión y orden en el caso de "In the Matter of Local 1664 (Dock Division) ILA, District Council No. 1 and Local 1664 (General Longshoremen Division) ILA, District Council No. 1 (103 NLRB No. 112)," en la cual con-

---

(¹) Ésa es la misma orden que nos ocupa en el presente recurso.

sideró los efectos de la cláusula de taller cerrado contenida en el mencionado Convenio, dirigiendo dicha orden tanto a la Puerto Rico Steamship Association y las compañías navieras por ella representadas, como a la ILA y sus oficiales, agentes, representantes y sucesores en Puerto Rico y Eusebio G. Moreno. En lo pertinente al efecto de la cláusula de taller cerrado contenida en el Convenio, dicha Orden dispone lo siguiente en cuanto a la Asociación y compañías navieras:

"(a) Cesar y desistir de: ...

"(2) Ejecutar o dar efecto a los contratos de 1950–1951 con la ILA o a cualesquiera modificaciones, extensiones, suplementos o renovaciones de los mismos, o a cualquier práctica que de ellos resulte que requieran como término o condición de empleo, ser miembro de la ILA o de cualesquiera de sus locales, excepto según se permite por la sección 8(a)(3) de la Ley;

"(3) Dar efecto al contrato de 1952 entre la Asociación y la ILA y cualquier nuevo contrato que pueda ser concertado entre la South Puerto Rico Sugar Co. y la ILA o cualesquiera modificaciones, extensiones, suplementos o renovaciones de dichos contratos, en tanto en cuanto dichos contratos, o cualesquiera prácticas que resulten de los mismos requieran cláusulas de seguridad ilegales o cualquier otra práctica ilegal ..."[2]

En cuanto a la ILA y sus oficiales locales, agentes, representantes y sucesores, y Eusebio G. Moreno, dicha Orden dispone:

---

[2] La orden, en su texto original en inglés sobre los extremos indicados, dice así:

"(a) Cease and desist from: ...

"(2) Performing or giving effect to the 1950–1951 contracts with ILA, or to any modifications, extensions, supplements, or renewals thereof, or to any practice resulting therefrom which require as a term or condition of employment membership in the ILA or any of its locals, except as permitted by Section 8(a)(3) of the Act;

"(3) Cease giving effect to the 1952 contract between the Association and the ILA and any new contract that may be entered into between the South Puerto Rico Sugar Co. and the ILA, or any modifications, extensions, supplements, or renewals thereof, insofar as said contracts, or any practices resulting therefrom, require illegal union-security provisions or other illegal practices ..."

"(*a*) Cesar y desistir de: ...

"(3) Ejecutar o dar efecto a los contratos de 1950–1951 con los patronos querellantes o a cualesquiera modificaciones, extensiones, suplementos o renovaciones de los mismos o a cualesquiera prácticas que de éstos resulten que requieran como término o condición de empleo, ser miembro de la ILA o de cualesquiera de sus locales, excepto según se permite por la sección 8(*a*)(3) de la Ley;

"(4) Dar efecto al contrato de 1952 con la South Puerto Rico Steamship Association o ejecutar cualquier nuevo contrato con la South Puerto Rico Sugar Co. o cualesquiera modificaciones, extensiones, suplementos o renovaciones de los mismos en tanto en cuanto dichos convenios contengan para su aplicación una cláusula de seguridad ilegal; ..."(³)

El 1ro. de mayo de 1953, luego de emitida por la Junta Nacional de Relaciones del Trabajo su Decisión y Orden de 30 de marzo a que nos referimos anteriormente, la Junta de Relaciones del Trabajo de Puerto Rico dictó una decisión y orden suplementaria a la suya del 14 de abril de 1952, a tenor con la parte dispositiva de nuestra decisión en el caso de *Junta Rel. Trabajo* v. *ILA*, supra, arriba transcrita, por la cual, luego de considerar la situación de derecho surgida con motivo de la indicada actuación de la Junta Nacional, ratificó en todos sus extremos la decisión y orden original del 14 de abril de 1952. Posteriormente acudió nuevamente a este Tribunal en la presente solicitud de que se ponga en vigor dicha Orden.

---

(³) Dicha orden, en su texto original en inglés, dice así:

"(*a*) Cease and desist from: ...

"(3) Performing or giving effect to the 1950–1951 contracts with the respondent employers, or to any modifications, extensions, supplements, or renewals thereof, or to any practices resulting therefrom, which require as a term or condition of employment membership in the ILA or any of its locals, except as permitted under the provisions of Section 8(*a*)(3) of the Act;

"(4) Giving effect to the 1952 contract with the Puerto Rico Steamship Association or executing any new contract with the South Puerto Rico Sugar Company, or any modifications, extensions, supplements, or renewals thereof, insofar as said contracts apply to an illegal union security provision for their execution; ..."

Después de la vista correspondiente sobre esta nueva solicitud, pospusimos la consideración de la misma hasta que la Corte de Apelaciones para el Primer Circuito pasara sobre la petición que a su vez había presentado ante dicha corte la Junta Nacional de Relaciones del Trabajo para poner en vigor su decisión y orden de 30 de marzo de 1953.

El 26 de marzo de 1954 la Corte de Apelaciones emitió decisión poniendo en vigor la orden de la Junta Nacional en todos sus extremos, entre ellos aquéllos anteriormente transcritos referentes al Convenio Colectivo contentivo de la cláusula de no-huelga, cuya violación motivó la petición original de la Junta local a este Tribunal, y motiva la presente.

Como surge de la decisión y orden de la Junta Nacional, la invalidez del Convenio Colectivo de los años 1950 y 1951—así como el del año 1952—está limitada a la cláusula sobre taller cerrado, contenida en el mismo, y a las obligaciones contraídas bajo la misma por las partes contratantes. La presencia de dicha cláusula no afectó, pues, dicho Convenio Colectivo en su totalidad, y por lo tanto no podía afectar la validez de la cláusula de no-huelga incluída en el mismo. Esa doctrina está sostenida por la decisión del Tribunal Supremo Nacional en el caso de *Labor Rel. Board* v. *Rockaway News Co.*, 345 U. S. 71, 97 L. ed. 832. En consecuencia, al violar las demandadas la cláusula de no-huelga del Convenio, según concluyó la Junta local, incurrieron en la práctica ilícita de trabajo de violación de convenio declarada por la sec. 8(2)(a) de la Ley de Relaciones del Trabajo de Puerto Rico. Dicha violación, por lo tanto, estableció un curso de conducta que justificó a la Junta local a dictar su orden de cesar y desistir de la práctica ilícita de trabajo así declarada por la ley local—no incluída como tal en, y sin que obste para ello la ley federal, *cf. United Construction Workers* v. *Laburnum Construction Corp.*, 347 U. S. 656, 22 U. S. Law Week No. 47, de 8 de junio de 1954—pero de tan gran significación y necesidad para la paz industrial y la economía puertorriqueña.

*Se pondrá en vigor la decisión y orden de la Junta de Relaciones del Trabajo de Puerto Rico de 14 de abril de 1952, ratificada por su orden del 1ro. de mayo de 1953.*

SENTENCIA

San Juan, Puerto Rico, a 30 de junio de 1954

Por los motivos consignados en la anterior opinión, se declara con lugar la petición de la Junta de Relaciones del Trabajo de Puerto Rico interesando se ponga en vigor su orden de fecha 14 de abril de 1952 y en su consecuencia se ordena a los demandados International Longshoremen Association (ILA) District Council of the Ports of Porto Rico y su Presidente Eusebio G. Moreno y sus Uniones Locales núms. 1740, 1782 y 1674 y sus respectivos presidentes Amado Torres Báez, Ramón Mejías y Juan Vidal Álvarez y su Sub-Local 1674 y su Presidente Lorenzo Rosaly:

1. Que cesen y desistan de:

En manera alguna violar los términos del convenio colectivo que tienen firmado o que firmen con la Porto Rico Steamship Association y Bull Insular Line, Inc., Waterman Dock Co., Inc., Lykes Line Agency, Inc., Pope & Talbot Co., Inc., Méndez & Co., Inc., San Juan Mercantile Corp., Porto Rico Coal Co., Porto Rico Lighterage, San Juan Trading Co., Inc., Behn Brothers, Fred Imbert, Inc., P. R. Dry Dock & Marine Terminal, Inc., Alcoa Steamship Co. y Rivera Shipping o con cualquiera otra asociación o patrono.

2. Que tomen la siguiente acción afirmativa:

(a) Notificar por correo certificado a la Porto Rico Steamship Association y Bull Insular Line, Inc., Waterman Dock Co., Inc., Lykes Line Agency, Inc., Pope & Talbot Co., Inc., Méndez & Co., Inc., San Juan Mercantile Corp., Porto Rico Coal Co., Porto Rico Lighterage, San Juan Trading Co., Inc., Behn Brothers, Fred Imbert, Inc., P. R. Dry Dock & Marine Terminal, Inc., Alcoa Steamship Co. y Rivera Ship-

ping que se abstendrán de violar los términos del convenio que con ellos tienen firmado o que firmen en el futuro.

(*b*) Fijar inmediatamente en sitios conspicuos de los locales donde tienen establecidas sus respectivas oficinas, copias del siguiente Aviso, debiendo mantener dicho Aviso fijado por un período de sesenta (60) días consecutivos desde la fecha en que haya sido fijado y tomar medidas razonables para evitar que el mismo sea alterado, cambiado o cubierto en forma alguna:

"Aviso a Todos Nuestros Unionados y Patronos Miembros de la Puerto Rico Steamship Association

"Dando cumplimiento a una Decisión y Orden de la Junta de Relaciones del Trabajo de Puerto Rico y con el propósito de efectuar la política pública expresada en la Ley de Relaciones del Trabajo de Puerto Rico, Nosotros, International Longshoremen Association, District Council of the Ports of Puerto Rico, presidida por Eusebio G. Moreno y sus Afiliadas Unión Local Núm. 1782, presidida por Ramón Mejías, Unión Local Núm. 1740, presidida por Amado Torres Báez, Unión Local Núm. 1672 (Unión de Dependientes), presidida por Juan Vidal Álvarez, su Sub-Local Unión de Dependientes Núm. 1674, presidida por Lorenzo Rosaly, notificamos a todos nuestros unionados y a los miembros de la Porto Rico Steamship Association que:

"En manera alguna violaremos los términos del convenio colectivo que tenemos firmado o que firmemos con la Porto Rico Steamship Association o con cualquier otra asociación o patrono, ya sea por medio de huelgas o en cualquier otra forma.

INTERNATIONAL LONGSHOREMEN ASSOCIATION DISTRICT COUNCIL OF THE PORTS OF PUERTO RICO

Por:.....................................

"Fijado en........................, Puerto Rico,

a......de....................... de 1954."

(c) Proporcionar al Presidente de la Junta suficientes copias firmadas del referido Aviso para que éste, previo el consentimiento de las compañías querellantes, las haga fijar en sitios conspicuos de los negocios de éstas.

(d) Notificar al Presidente de la Junta dentro de los diez (10) días siguientes a la fecha de esta Sentencia qué providencias han tomado las querelladas para cumplir con lo que aquí se les ordena.

Así lo pronunció y manda el Tribunal y firma el Sr. Juez Presidente.

A. C. SNYDER,
*Juez Presidente.*

Certifico:

IGNACIO RIVERA,
*Secretario.*